Good morning, and may it please the Court. My name is Marissa Pasker, and I represent Appellant Danette Hester. This is an appeal from the Southern District of Iowa's grant on Appellant's motion for summary judgment. This Court should reverse that decision because there still remains jury questions on the issues of whether Ms. Hester has presented sufficient facts for her claim of pretext, whether the substantially younger standard was properly applied, and whether Ms. Hester has proven her claim of retaliation. Beginning with the race and gender discrimination claims from Ms. Hester, this issue hinges on whether she has proven that defendant's rationale is unbelievable. Ms. Hester is required to present facts which create an inference of pretext. The rejection of the defendant's proffered reasons then permits the fact finder to infer the ultimate fact of intentional discrimination. When looking not only to the timeline of the defendant's changing the RDCI position from 2 to 1, but also the rationale for selecting Mr. DeFaria over Ms. Hester, there are sufficient facts which when viewed in the light most favorable to Ms. Hester show pretext. The defendants claim that they did not hire Ms. Hester due to an upcoming reorganization, but the timeline and the context do not align and there are shifting and unbelievable explanation by the defendant. First, the job originally was posted in December of 2020. Second, Ms. Hester was selected for that position in March of 2021. Third, the defendant then decided that there would only be one RDCI position available due to the reorganization. Fourth, the defendant admits that the reorganization was announced in December of 2020 and that did not include limiting the RDCI position from 2 to 1. Fifth, no one on the selection panel knew that the upcoming reorganization meant the RDCI position would be limited from 2 to 1, especially given the fact that they were both announced in the same month. And sixth, the position was not limited due to a requirement by the defendant, but merely because they could. This timeline is sufficient not only to show a shifting or unbelievable rationale for limiting the RDCI position, but it's also important to consider in conjuncture with the rationale for selecting Mr. DeFaria. The defendant claims that they selected Mr. DeFaria over Ms. Hester because he possessed the skills that they were looking for more than she did. Specifically, the job description details how important training experience is and so does Mr. Ultimis' email explaining why they selected Mr. DeFaria. When we look at the resumes of Ms. Hester and Mr. DeFaria, Ms. Hester details in almost two pages her international and local training experience, while Mr. DeFaria dedicates, I experience. More so, Ms. Hester highlights how exceedingly successful she has been in her trainings, which is very rare. And then the defendant also claims an important skill Mr. DeFaria possessed, which Ms. Hester does not, is that he can speak Spanish. She's bilingual. Fluency, apparently. Yes. Apparently, yes. It's their word. But first of all, this skill is not required for the job in the job description or mentioned as preferred. It was not brought up by the defendant in their interview questions. And second of all, Ms. Hester has presented facts which show that even without being bilingual, she has been exceedingly successful in the international training. Counsel, what about the intervening statement, in the end we all agree, she's talking about the selection committee. That's a he, I think, writing this one. In the end, we all agree that Winston DeFaria is our number one choice and Danette Hester is our number two option for these positions. Doesn't that go a long way toward doing away with pretext, that flat statement of ranking at the time? I think that when viewing all of the facts together, that it is, there were two positions available and the selection panel believed so. So there is also, when looking at all the circumstances in the timeline, a reasonable understanding that they meant that Winston DeFaria was the first selection for the first position and she was the selection for the second position. She was our number two because there were two positions available. Of course, option usually doesn't mean that. Their word is option. Number one option and number two option. An option is where there's a choice, generally, about the use of the word option. So again, I think looking at all of the facts here that there is more than to overcome the word option here. I think that, you know, the department and the defendant claims that the training experience, the extensive international training experience was very important. But when we look at the facts, Ms. Hester has presented that she was more experienced or at least when looking at the resumes, seemingly is more experienced. And I want to go back again to the fact that Mr. DeFaria is fluent in Spanish. That may be helpful in Spanish-speaking countries. But what about some of the international trainings Ms. Hester has done? It doesn't seem that it would be important there. And this is similar to the case in Gaworski v. ITT, Commercial Financial Corporation, which I cited in my 28-J letter, where the court found the materially conflicting evidence raised a question as to the fact of the believability. And that's what Ms. Hester has shown here. And again in Gaworski, the court there found that when the defendant stated that the computer skills required made the other employee more, you know, valuable to them, yet the computer skills were not mentioned in the job posting and weren't all that necessary for the job. I think that that's a similar scenario here. So in considering both of those rationales, I think that there is sufficient evidence on which a jury could find the defendant's rationale believable. In turning now to Ms. Hester's age discrimination claim, the district court erred in applying the substantially younger standard in a rigid way. The required showing for a prima facie claim under McDonnell Douglas is a flexible evidentiary standard. This is because... It's just four years here, right? Yes. There's a four-year difference, Your Honor.  Yes. Requiring a rigid standard wouldn't effectuate the purpose of the burden-shifting framework. And the Eighth Circuit has recognized in some instances when looking at all of the facts is important. And there's been cases where the court doesn't decide whether or not it's above 40 or below 40, or whether or not necessarily the difference in the age is, although the difference in age is important to look at. We're not saying that it's not. But we have some black letter that says age difference of five years or less is not substantially younger, right, counsel? When looking at the facts of that case, it was not substantially younger. But when looking at the facts of the case here, first of all, this is a senior level position where the defendant would not likely get applicants in their 20s and 30s. And then also, Ms. Hester has shown that she was seemingly more qualified, again, with the international training experience, which defendant claims was very important for this position. Does the record reflect if age was indicated anywhere on the resumes here? You know, most resumes now are age-proof, so to speak. Yes, Your Honor. So I believe that age is not specifically mentioned. But when you look at their experience and their education, there are, I believe, years listed which could raise an inference of age. But the ages are not specifically mentioned. So and again, Ms. Hester has shown pretext, which does help in her prima facie claim of discrimination and discriminatory intent. And so when adapting the flexible standard to these facts and allowing the burden-shifting framework to be flexible as it was intended to be, Ms. Hester has proven her claim of age discrimination. And lastly, I want to quickly touch on the retaliation claim. The court in Burlington Northern laid out the test, which I believe this court should just now perfectly follow. The test is whether an action to be material or to be, excuse me, an adverse employment action would dissuade a reasonable person from making or supporting a claim of discrimination. And a reasonable jury is not required to find that the challenge action, underlying challenge action, is related to the terms and conditions of employment. The standard is that of materiality in order to separate the significant from the trivial harms. And proposing termination is not a mere slight or a petty comment, and proposing termination is not just something that comes about in the normal course of business, especially when we look at the language of the letter itself. The Burlington court also explained the reasonable standard, which is so the judge can view the evidence from an objective viewpoint considering all the context. The court says, quote, context matters, period, end quote. The court also utilizes common sense to analyze the context. So looking here at what a reasonable person in this context and knowing these facts might feel as dissuading them from promoting or supporting a claim of discrimination, looking at the severity of this for being a first offense, looking at the timing of the proposed termination, and looking at the language itself that states that there's no potential for rehabilitation and that removal is the only reasonable sanction, I think it's clear or at least a fact question remains on whether a reasonable person would feel dissuaded, especially, again, considering the facts of Burlington Northern. And lastly, turning to the causal connection on the retaliation claim, the timing, I think, speaks for itself. But what's more than temporal proximity is just the timing of the overall events themselves. Ms. Hester's actions were from 2018. She was replaced on restricted duty in 2019, yet she was able to still conduct international trainings. She was trusted to do her job, so defendant's rationale does not add up. So for those reasons, we would ask the court to reverse the district court's ruling. Thank you. Thank you. May it please the court, good morning. My name is Jeff Ray. I'm from the United States Attorney's Office in the Western District of Missouri and I'm here today representing the Department of Treasury. We respectfully request that the court affirm the judgment entered below by the district court. We believe it is entirely consistent with this court's prior precedence. I will briefly address the issues in the same order Ms. Pasker did. With respect to pretext, I cannot emphasize this as much enough, both these candidates were qualified. There's no one arguing here that Ms. Hester was not qualified for this job. I don't believe there's any legitimate argument can be made that the selectee was not also qualified. But due to reorganization and with all due respect to Ms. Pasker, governments do reorganize. We do it all the time and there are change in circumstances. This reorganization did not cost Ms. Hester this job. With the reorganization, the deciding official was told we can only fill one position. I will leave it up to you. I believe Judge Benton is correct. After the interviews, Mr. DeFaria was ranked number one, Ms. Hester was ranked number two. But even then, the official was told it's up to you as to which one you pick. If there was a moment of discrimination, it has to occur at that point. But this court has said repeatedly over the years, when you have multiple candidates applying for a position, a promotion, and they're of equal or similar qualifications, it is not the job of the court to wade into the business decision made by, in this case, a federal agency or in another case, a private business, as to who to promote. That is the sort of micromanaging that this court I know is loathe to enter into and that would be disastrous and contrary to the entire intent of Title VII and the other employment discrimination laws. In this case, the deciding official, Mr. Altimus, explained, although both candidates were highly qualified and had two positions, he would have given both a job, he had one position and he had to pick one. If we're going to say that the substantially similar qualifications of these two candidates is enough to survive for a primary profession case, it puts the employer in an impossible position. In this case, had the Department of Labor chosen Ms. Hester, then Mr. DeFario would have sued, arguing, I had superior qualifications. Because the qualifications being superior or inferior is entirely, in this case, in the subjective perception of the claimant, ultimately this court, in viewing a case where two candidates have similar qualifications, has to step aside and say, absent some explicit evidence of discrimination, a promotion between two candidates of similar qualifications is simply not the sort of thing the federal court wants to wade into. Is Ms. Hester the only one in a protected class of all these actors? Mr. DeFario, who is an African-American man, could have presumably sued under either sex or race. So, I mean, it all depends on how you want to draw your classification. With the case currently before the Supreme Court, it may be that your sex and your gender, regardless of what it is, puts you in a protected class. We may all be protected classes in the end. Jumping real quickly to the issue of age discrimination. There are hard and fast rules, but that's, as I read it, those cases, is very similar to retaliation. If all you're relying upon in retaliation is temporal proximity, then the further apart the events are, the less persuasive that's going to be. Similarly, with respect to age discrimination, the closer in age the two candidates or the two comparators are, then the less we're going to be inclined to infer age discrimination. In this case, the difference of four is certainly well within the five years that this court has sort of indicated is a bright line. But I think even in that case, it's a bright line only if you're totally relying upon the age difference to meet that particular qualification of the prima facie case to show an inference of age discrimination. Counsel, did I understand you to say Mr. DeFaria was an African-American? That's what I thought I saw. Well, the blue brief says several times non-African-American. Okay. I will apologize. I haven't looked at your brief yet. I thought I saw that in the briefing somewhere, but I will readily admit that I could have gotten that, made that mistake. I was not the attorney who handled it at the trial level. And not the attorney in the brief, right? No. I'm just adding her as the brief. Yeah, proceed. But with respect to age, there is a four-year difference here. What's significant isn't just the four-year difference. That's the entire basis on which they're asking for an inference of age discrimination. Much like this court has repeatedly said in retaliation, if all you're relying upon is temporal proximity, or in this case, a slight age difference, then we're going to look on that with suspicion. And to that extent, this court has repeatedly said age differences less than five, four, three, just do not raise an inference of age discrimination. Once again, very similar to the situation we have where we have two candidates seeking a promotion that have similar qualifications. Absent something more dramatic, it's not really the job of the court, and not a job I'm sure you look for, to wade into the business decisions being made by government agencies and private businesses as to who to promote. I would also point out that with respect to the age discrimination, even if the court were inclined to find this four-year difference to be some indication of an inference of age the claim would still have to survive the same pretext analysis that we've already discussed with respect to race and sex. Very briefly, with respect to retaliation, I do believe that there is a substantial question as to causation. In this case, Ms. Hester filed her EEO, her first EEO complaint on July 9th, 2021, and then filed her second complaint claiming after she received her proposed termination letter on June 4th, 2022. I know there have been different, the briefs use different time frames with respect to what the gap is, but whether it's nine months, whether it's a year or seven months, it seems clear that it is well beyond what this court normally would consider as an inference of retaliatory motive, particularly when, again, there is no other evidence in the record in which to establish such an inference. With respect to the adverse employment action, again, we believe that the ruling of the district court was completely consistent with this court's prior precedents. In Muldrow, the Supreme Court addressed the requirements for an adverse employment action, but in doing so, they specifically reaffirmed Burlington v. White, Northern v. White, and the requirement that there be some level of materiality that is causing a reasonable employee to be dissuaded from filing a future action. This court's prior precedents have said that proposals or threats to terminate or to take other disciplinary action in and of themselves do not meet this materiality standard. We believe that applies post-Muldrow to a case like this and a proposed termination. However, again, I would emphasize, even if the court were to find that the prima facie cases met, in this case, the alternative holding of the district court, that there was no showing a pretext, still leads to the same outcome in favor of the Department of Treasury. Ms. Hester was charged with three specifications of improper misconduct. There's been no indication that those were fabricated. There's been no indication that those were not reasonably relied upon by the agency in proposing the termination, and as a result, we think there's been no showing of a trial-worthy issue of pretext. And on behalf of the Secretary of Treasury, I would ask that the court affirm the district court. Thank you. Thank you, Mr. Ray. Ms. Paster, you used all of your time. I'll allow you one minute if you think there's something you really need to respond to, but if not... Thank you, Your Honor. Just really quick, I want to highlight, again, the Burlington Northern facts do support our retaliation claim where the court upheld the jury's finding that a 37-day suspension with back pay caused the plaintiff material harm when she testified about the emotional hardship it had on her. So I think that those facts are very similar here. Along with the pretext, we aren't questioning the fact that this was a business decision, but the believability of the business decision, which is permitted under many, many cases are precedent. And then lastly, the age discrimination, the Eighth Circuit hasn't laid out a bright line test for you have to be this many years or older. It does say repeatedly that the facts are important and must be considered. And lastly, to go to the question on Mr. DeFaria's race, I do believe he was Hispanic, but I may be... I didn't do the briefs as well, so I could be incorrect. The district court says so on the first page, non-African American, later it blights Hispanic.  Yes, of course. Thank you, Your Honor. Thank you, counsel. We appreciate it.